IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAULA WALLRICH, DANIELLE JONES, GRANT GRINNELL, JEFFREY BURTON, RHONDA MCCALLUM, PROVIDENCIA VILLEGAS, and 49,980 other individuals, | |
| Petitioners, | Case No. 19 C 4560 |
| v. | Judge Harry D. Leinenweber |
| SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG ELECTRONICS CO., LTD., | |
| Respondents. | |

## MEMORANDUM OPINION AND ORDER

Petitioners, each Samsung device users, petitioned this Court to compel arbitration against Respondent Samsung (Dkt. No. 1; Dkt. No. 2) upon Samsung's refusal to pay filing fees. Samsung moved to dismiss the petition for improper venue (Dkt. No. 26) and opposed the merits of the petition. For the reasons stated herein, the Court grants in part Samsung's Motion to Dismiss (Dkt. No. 26) by dismissing the action as to the 14,335 Petitioners who have failed to plead proper venue in the Northern District of Illinois, and the Court grants Petitioners' Motion to Compel Arbitration (Dkt. No. 2) by ordering the remaining parties to arbitrate.

## I. **BACKGROUND**

### A. **Parties**

Petitioners are 49,986 Samsung device users who have lived in Illinois. (Pet. To Compel Arb. ("Pet.") ¶¶1, 21, 28, Dkt. No. 1; Pet. M. to Compel Arb. ("MTC"), Dkt. No. 2 at 1.) Respondents are Samsung Electronics America, Inc. ("SEA") and Samsung Electronics Co. Ltd. ("SEC") (collectively, "Samsung"). (Pet. ¶¶22-23.) SEC, a Korean corporation, is the parent company to SEA. (Pet. ¶23.) Samsung designs, manufactures, and sells devices, including smartphones and tablets. (Pet. ¶27.)

### B. **Terms**

By utilizing their Samsung device, each user agreed to several Terms & Conditions ("T&C") established by Samsung. (*See* Samsung's In-Box Terms & Conditions, Pet. Ex. B, Dkt. No. 1-3; Samsung's End User License Agreement ¶16 "¶16. *Arbitration Agreement*," Pet. Ex. C, Dkt. No. 1-4; Samsung Electronics' Terms and Conditions at 6, Pet. Ex. D, Dkt. No 1-5; Samsung's online Terms & Conditions, Pet. Ex. E, Dkt. No. 1-6 (collectively, "terms" or "Arbitration Agreement").) To register a Samsung device, users must provide the company with personally identifiable information such as the user's name and zip code (Petitioners' Opposition to M. to Dismiss ("Opp. MTD"), Dkt. No. 36 at 9); *see* "Create your Samsung account,"

*https://account.samsung.com/accounts/v1/MBR/signUp* (last accessed July 13, 2023).

Samsung's terms stipulate alternative dispute resolution (ADR) such that "[a]ll disputes with Samsung arising in any way from these terms shall be resolved exclusively through final and binding arbitration and not by a Court or Jury." (Pet. Ex. E at 3; *see* Pet. Ex. C ¶16; Pet. ¶¶2—3.) These terms also prohibit "class action" and "combined or consolidated" disputes, instead mandating solely individual claims. (Pet. Ex. E at 3; Pet. Ex. C ¶16; *see* Pet. ¶3.)

The terms specifically delegates arbitration proceedings to the American Arbitration Association ("AAA"). "The arbitration shall be conducted according to the [AAA] Consumer Arbitration Rules" (Pet. Ex. B at 10; Pet. Ex. C ¶16). Pursuant to the AAA Consumer Arbitration Rules ("Consumer Rules" or "Rules"), an arbitrator is assigned to resolve the claims brought. (Consumer Rules, Dkt. No. 1-7.) The arbitrator is vested with "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (Rule R-14.)

The Rules outline the Association's fee schedule for AAA administrative proceedings. (*See* Rules at 33—40.) Rule R-6 specifies,

> The AAA may require the parties to deposit in advance of any hearings such sums of money as it decides are necessary

> to cover the expense of the arbitration, including the arbitrator's fee, and shall render any unused money at the conclusion of the case.

(*Id.* at 14.) The AAA's fees were in place when Samsung initially adopted its Arbitration Agreement in 2016, and those fees have been reduced in the multiple case filing scenario by the AAA's adoption of its Supplementary Rules for Multiple Case Filings ("Supplementary Rules"), effective August 1, 2021. (Reply MTC at 2; *see also* AAA Supplementary Rules, Response MTC Ex. 2, Dkt. No. 27-2.)

These Supplementary Rules apply when the same or coordinated counsel files 25 or more similar demands against the same respondents. (*See* Supplementary Rules, Dkt. No. 27-2.) Together with the Consumer Rules, the Supplementary Rules anticipate scenarios where either consumers or businesses cannot pay, or decline to pay, their assigned initial administrative fees. (*See id.*) Specifically,

> If administrative fees, arbitrator compensation, and/or expenses have not been paid in full, the AAA may notify the parties in order that one party may advance the required payment within the time specified by the AAA.

(Supplementary Rule MC-10(d).) A party that advances fees may then recover them in the final arbiter award. (R-44(d); *see* Opp. MTC at 6.) If the arbitrator determines that a party's claim was filed "for purposes of harassment or is patently frivolous," she may allocate filing fees to the other party in the final award. (Rule R-44(c).) Additionally,

- 4 -

> If payments due are not made by the date specified in such notice to the parties, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend or terminate those proceedings. . . .

(Supplementary Rule MC-10(e)).

Neither the terms nor the AAA Rules specifically designate the venue for arbitration. The Rules do provide:

> If an in-person hearing is to be held and if the parties do not agree to the locale where the hearing is to be held, the AAA initially will determine the locale of the arbitration. If a party does not agree with the AAA's decision, that party can ask the arbitrator, once appointed, to make a final determination. The locale determination will be made after considering the positions of the parties, the circumstances of the parties and the dispute, and the Consumer Due Process Protocol.

(Rule R-11.) (*Id.*)

### C. Dispute

Seeking redress for alleged violations of the Illinois' Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.,* Petitioners filed 50,000 individual arbitration demands before the AAA on September 7, 2022. (Pet. ¶¶ 1, 11, 14 n. 2; *see* Representative Sample of Demand, Pet. Ex. J, Dkt. No. 1-11; MTD, Dkt. No. 26 at 6, 17.) Appended to each petition was the arbitration agreement. (Dkt. No. 35 at 6 (citing 2022.10.31 Letter from AAA to Parties, Reply MTC Ex. A, Dkt. No. 35-1, replicated in Opp. MTC Ex. 14, Dkt. No. 27-14.) On September 27, 2022, the AAA invoiced Petitioners for their share of the initial administrative fees, which Petitioners

thereafter paid. (*Id.*; *see also* AAA Invoice to Claimants, Dkt. No. 1-13; Claimants Payment Confirmation, Dkt. No. 1-14.) On September 27, 2022, Samsung notified the AAA that it would not pay its share of the assessed initial administrative fees for the Illinois claimants because it found the claimant list included discrepancies such as deceased claimants and claimants who were not Illinois residents. (*See* Pet. ¶14, Ex. N, Dkt. Nos. 1, 1-15.) Samsung agreed to pay the fees for fourteen petitioners now living in California, citing California Code of Civil Procedure § 1281 *et seq.,* which provides for sanctions in event of nonpayment. (Pet. ¶14 n. 2; *see* Pet. Ex. N.)

On October 7, 2022, Petitioners, as 49,986 individual claimants, filed in this Court a Petition for an Order to compel Samsung to arbitrate. (*See* Pet.) Petitioners have not sought class certification.

In reviewing the arbitration demands at issue here, the AAA determined both the AAA Rules and the Supplementary Rules apply. (10.12.22 Letter from AAA to Parties, Opp. MTC, Ex. 3, Dkt. No. 27-3.) Pursuant to these rules, the claimants must provide to the AAA a spreadsheet that includes the claimant's name, claimant city, state, zip code, claim date, and locale state. (*See id.*; *see* Rule R-2; Supplementary Rule MC-2.) Claimants did so. (*See* 10.12.22 Letter.) But, consistent with Samsung's objections a couple weeks prior as to

certain individuals listed, the AAA found the spreadsheet contained "inaccurate/incomplete information." (*Id.*) Thus, the AAA requested a corrected spreadsheet (*id.*), thereafter provided by Petitioners (2022.10.21 Labaton Email, Dkt. No. 27-13 at 1) to the AAA's satisfaction (2022.10.31 AAA Letter, e.g., Dkt. No. 27-14; *see* Amended Claimant Spreadsheet, Exhibit D, Dkt. No. 36-4.) Aside from the 14 California claimants, 14,334 claimants listed as their claimant city an Illinois town in the Central or Southern districts of Illinois, one individual listed Brooklyn, New York, and the remainder listed a locale within the Northern District of Illinois. (*Id.*; MTD.)

The AAA issued its administrative determination on October 31, 2022, that "claimants have now met the AAA's administrative filing requirements on each of the 50,000 cases filed," and that "Samsung is now responsible for payment of the initial administrative filing fees totaling $4,125,000.00." (10.31.22 AAA Letter, Dkt. Nos. 27-14; 35-1.) On November 8, 2022, Samsung again declined to pay the initial fees. (Dkt. No. 27-15.) On November 14, the AAA notified the parties: "Based on the claimants' and Samsung's statements declining to pay Samsung's portion of the filing fees for the non-California cases, unless we hear otherwise prior to November 16, 2022, the AAA will close all non-California cases." (Dkt. No. 27-16.) On November 17, 2022, Petitioners again declined to pay Samsung's fees.

(Dkt. No. 27-17.) On November 30, 2022, the AAA notified the parties that it had administratively closed those 49,986 claims. (Dkt. No. 27-19.) Since the AAA required the payment of initial fees to proceed, the AAA neither assigned an arbitrator to the claims, nor designated a locale for arbitration. (*See* Supplementary Rule MC-10(a); Rule R-11; *see also* Opp. MTD at 1-2; Reply MTD at 8-9.)

## II.  LEGAL STANDARD

The Court considers the parties' arguments as demanded by the respective standards.

### A.  Subject Matter Jurisdiction

A federal court must have subject matter jurisdiction to adjudicate any claim brought before it. *Mathis v. Metro. Life Ins. Co.,* 12 F.4th 658, 663 (7th Cir. 2021). Subject matter jurisdiction cannot be waived, and if the Court determines at any point that it lacks subject matter jurisdiction over the matter, it must dismiss the action. FED. R. CIV. P. 12(h)(3).

### B.  Motion to Dismiss for Improper Venue

Pursuant to Federal Rule of Procedure 12(b)(3), this Court reviews the motion to dismiss for improper venue by "construing all facts and drawing reasonable inferences in favor of the plaintiff." *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011); *see also* FED. R. CIV. P. 12(b)(3). The Court may consider

facts beyond the pleadings in its venue analysis. *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.,* 417 F.3d 727, 733 (7th Cir. 2005).

### C. Motion to Compel Arbitration

The FAA allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Thus, "arbitration should be compelled if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Scheurer v. Fromm Family Foods LLC,* 863 F.3d 748, 752 (7th Cir. 2017) (citing *Zurich Am. Ins. Co. v. Watts Indus., Inc.,* 417 F.3d 682, 687 (7th Cir. 2005)).

Courts in this Circuit apply an evidentiary standard akin to that articulated in Federal Rule of Civil Procedure 56(e) for summary judgment when determining whether the parties agreed to arbitrate. *Tinder v. Pinkerton Sec.,* 305 F.3d 728, 735 (7th Cir. 2002). Thus, if the party seeking arbitration offers evidence sufficient to find the parties' agreement to arbitrate, the opposing party must demonstrate a "genuine dispute of material fact regarding whether the parties agreed to arbitrate in the first place," *Kass v. PayPal Inc.,* 2023 WL 4782930, at *5 (7th Cir. July 27, 2023). The opposing

party cannot "generally deny[] facts" but must identify specific evidence in the record to support its argument. *Tinder,* 305 F.3d at 735. A court may not rule on either the potential merits of the underlying claim or its arbitrability when these determinations are assigned by contract to an arbitrator, even if a court perceives frivolity. *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S.Ct. 524, 530 (2019); *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 649-50 (2011).

### III. <u>DISCUSSION</u>

#### A. Subject Matter Jurisdiction

In their petition, Petitioners attribute this Court's subject matter jurisdiction to the federal question of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.,* pursuant to federal jurisdictional statutes, 28 U.S.C. §§ 1331 and 1367. It is not so simple.

In 1925, Congress enacted the FAA "[t]o overcome judicial resistance to arbitration," *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443 (2006), and to declare "'a national policy favoring arbitration' of claims that parties contract to settle in that manner," *Preston v. Ferrer,* 552 U.S. 346, 353 (2008) (quoting *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1984)). Pursuant to Section 4 of the FAA, aggrieved parties "may petition any United States district court which, save for such agreement, would have

jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Still, the Act remains "'something of an anomaly in the field of federal-court jurisdiction' in bestowing no federal jurisdiction but rather requiring an independent jurisdictional basis." *Hall St. Assocs., L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 581-82 (2008) (quoting *Moses H. Cone,* 460 U.S. at 25, n. 32); *see also Badgerow v. Walters,* 142 S.Ct. 1310, 1314 (2022). An "independent jurisdictional basis" may derive from the underlying controversy. *Vaden v. Discover Bank,* 556 U.S. 49, 62, (2009)). Section 4 "instructs a federal court to 'look through' the petition to the 'underlying substantive controversy' between the parties—even though that controversy is not before the court. *Badgerow,* 142 S.Ct. 1310, 1314 (quoting *Vaden,* 556 U.S. at 62). Arbitration agreements, like this one, often involve only questions of state law. *See id.* at 1326 (Breyer, J., dissenting). Here, the action is predicated under Illinois state law, i.e., the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/15(b). Therefore, Petitioners' claim of subject matter jurisdiction by means of a federal question remains improper.

Nevertheless, Respondents concede a different jurisdictional basis still rooted in the FAA itself, citing *Vaden,* 556 U.S. at 59

n.9 (2009) and sections 202 and 203 of the FAA, "because . . . the arbitration agreement is not 'entirely between citizens of the United States'" as Respondent SEC is a South Korean corporation. (MTD, Dkt. No. 26 at 9-10 (quoting 9 U.S.C. § 202); *see* Pet. ¶23.) The Court agrees that there is jurisdiction under Chapter 2.

In 1970, the United States acceded to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, (Convention), which Congress codified by implementing Chapter 2 of the FAA, as expressed in section 201 of the FAA. *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC,* 140 S.Ct. 1637, 1644 (2020) ("*GE France*") (citing 84 Stat. 962 and 9 U.S.C. §§ 201-208). "Chapter 2 . . . empowers [federal] courts to compel arbitration" over actions falling under the Convention. *GE France,* 140 S.Ct. at 1644 (citing § 206 and Convention Article II(3)); *see* 9 U.S.C. § 202. An agreement "fall[s] under the Convention" when it is commercial in nature and a party is foreign. 9 U.S.C. § 202. Chapter 2 also states, "'Chapter 1 applies to actions and proceedings brought under this chapter to the extent that [Chapter 1] is not in conflict with this chapter or the Convention.'" *Id.* (quoting § 208).

Therefore, although Petitioners bring the action to compel arbitration under Section 4 in Chapter 1 of the statute, this Court maintains its subject matter jurisdiction through Chapter 2 to compel

arbitration of this commercial arbitration agreement with a foreign party.

### B. Venue

Chapter 2, section 204 of the FAA contains its venue provision, which "supplement[s], but do[es] not supplant the general [venue] provision, [28 U.S.C. § 1391]." *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.,* 529 U.S. 193, 198 (2000); *see also Day v. Orrick, Herrington & Sutcliffe, LLP,* 42 F.4th 1131, 1141 (9th Cir. 2022) (Section 204 is a "permissive, supplemental venue provision in addition to the general venue provision, 28 U.S.C. § 1391."). Samsung seeks to dismiss on grounds that neither provision affords venue to this action. Petitioner argues that venue is proper under both statutes. The Court considers each path.

#### 1. FAA Venue Provision, 9 U.S.C. § 204

Under section 204 of the FAA, a court exercising jurisdiction under section 203 is a proper venue for an action where (1) "save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought," or (2) "the district . . . embraces the place designated in the agreement as the place of arbitration." 9 U.S.C. § 204.

As discussed, *supra*, Petitioners cannot establish the first option for venue under section 204 of the FAA because the arbitration agreement itself *is* the source of subject matter jurisdiction. Absent

an agreement subject to the Convention, this Court would not have jurisdiction on the underlying BIPA issue. This leaves the second option. Petitioners claim, "[v]enue is proper in this District because . . . the arbitrations were venued to take place in this District." (Pet. ¶26.) However, the numerous exhibits to this action do not show as much. Rather than designating a place of arbitration, Samsung's Arbitration Agreement simply incorporates the AAA Rules. Rule R-11 provides that if the parties do not agree to the locale for a hearing, the appointed arbitrator will determine the venue after considering the positions of the parties, dispute, and AAA due process protocol. The AAA did not appoint an arbitrator, nor determine venue of any arbitration before closing its proceedings.

For these reasons, venue does not lie in this District pursuant to the FAA.

### 2. General Venue Statute, 28 U.S.C. § 1391

Petitioners alternatively seek to establish venue under the general venue statute, 28 U.S.C. § 1391, through § 1391(b)(2), which affords venue to "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b).

Petitioners claim that venue lies here "because many of the Petitioners live in this District" (Pet. ¶26), and the claimants' use of their Samsung Devices in this district evidence a "substantial

- 14 -

part of the events giving rise" to Petitioners' claims occurring here. (Opp. MTD, Dkt. No. 36 at 29). Petitioners assert via exhibits that its 49,985 claimants are Illinois residents, approximately 35,651 of whom reside within the Northern District of Illinois. (*See* Pet. Ex. A, Dkt. No. 1-1; Pet. Opp. MTD Ex. D, Dkt. No. 36-4.) Samsung argues that because Petitioners' Exhibit D does not provide the names associated with these claims, Petitioners failed to identify the claimants as necessary for Samsung to form a defense. Petitioners retort that Samsung has these names, which are listed in the otherwise identical spreadsheet provided to the AAA. Petitioners suggest that they omitted the names in the case filing to preserve these claimants' privacy during the litigation. (*See* Opp. MTD, Dkt. No. 36 at 22 n. 6.) Petitioners argue that when coupled with the identifying information Samsung obtains from its users upon users' registration or account creation, these cross-references offer sufficient evidence for Samsung to identify each claimant during arbitration. The Court agrees.

Samsung next argues, "[t]o the extent that Petitioners seek to use their place of residence as a proxy . . . to satisfy the 'substantial events' provisions of Section 1391 in this District, Petitioners fail to provide sufficient evidence of each Petitioner's residence" (MTD at 15), and "[Petitioners'] speculation that all Petitioners may have used their devices while residing in and

traveling throughout this District is mere guesswork" (MTD Reply, Dkt. No. 38 at 22 (citations omitted)). It is true that a plaintiff's residence alone fails to satisfy § 1391's requirements. *Ford-Reyes v. Progressive Funeral Home,* 418 F.Supp. 3d 286, 290 (N.D. Ill. 2019). Instead, this Court looks to events that constitute part of the historical predicate of Plaintiffs' suit. *See Johnson v. Creighton Univ.,* 114 F.Supp. 3d 688, 696 (N.D. Ill. 2015).

The historical predicate to Petitioner's petition for compelled arbitration includes the formation of a contract to arbitrate (upon the Petitioner's assent to Samsung's Arbitration Agreement when, *e.g.,* purchasing or activating their Samsung Device), the alleged violations that occurred during Petitioners' foreseeable use of the device, and Samsung's actions rejecting arbitration. Petitioners adequately showed that the formation of the contract and the alleged violations took place, foreseeably, in the Northern District of Illinois for most Petitioners. The Court takes judicial notice of today's norm that smartphone users use their smartphone where they live and travel and likely purchased it nearby. Drawing all reasonable inferences from Petition Exhibit D, its cross-references, and Petitioners' assertions that each claimant used their Samsung Device within the Northern District of Illinois (usage which motivated their individual arbitration claims, and by extension, the petition in this court), the approximately 35,651 Petitioners

- 16 -

residing in this district have established that this is the proper venue for their motion to compel arbitration.

Not so, however, for the 14,335 Petitioners who admittedly do not reside in this district. Petitioners fail to explain the connection between the Northern District of Illinois and the Illinois residents living outside it. Illinois is a sizeable state. For example, ten claimants list as their residence Dongola, Illinois, a town located nearly 350 miles from this Courthouse. Although Petitioners correctly point out that a "substantial part" does not require a majority and that "substantial part[s]" of the same claim can occur in multiple districts, *see Receivership Mgmt. v. AEU Holdings,* 2019 WL 4189466, at *14 (N.D. Ill. 2019), the Court recognizes no presumption that every Illinois resident conducts a substantial part – or any part – of their life in Chicagoland or this district more broadly. Thus, for those 14,335 individuals, even after drawing all reasonable inferences, Petitioners have failed to allege sufficiently that a "substantial part of the events" giving rise to the present dispute occurred in this district. § 1391(b)(2).

Petitioners argue that because Samsung admitted that this District was the proper venue in the BIPA class-action suit against Samsung in the Northern District, *G.T. v. Samsung Electronics America, Inc.,* No. 1:21-cv-04976, ECF No. 17*,* Samsung cannot now argue to the contrary in this suit. *See* Opp. MTD at 31. But, as

Petitioners appear to acknowledge, the claimants in this action are not necessarily party to the other one. *See* Reply MTC at 14 ("Samsung cannot simply refuse to pay its fees in hopes of ushering Petitioners into the *G.T.* class action," implying the Plaintiffs in these two cases are not identical). Petitioners offered no authority to support their claim that a finding of proper venue in one case transfers. Nor will they find validation from this Court today. Therefore, for the approximately 14,355 non-residents of this District, Petitioners have failed to allege sufficient facts to determine that this is the proper venue for their suits.

Thus, this Court infers that for the 35,651 claimants who alleged residence within the Northern District of Illinois, a substantial part of the events giving rise to this dispute occurred in this District. Therefore, Petitioners have sufficiently established that venue lies in this district for their breach of arbitration agreement claims. The petitions as to these remaining non-resident claimants are dismissed without prejudice for improper venue.

### C. Compel Arbitration

Before the Court considers whether to compel arbitration, the Court will explain why it can. After determining that the case warrants such an order, the Court considers whether to explicitly order the payment of fees.

Samsung declares that the Court may not compel arbitration (including its fees) because Petitioners are now entitled to proceed in Court from where Petitioners might attain an adequate remedy at law. The authorities Samsung cites, address different forms of relief than that sought here. *See United States v. Rural Elec. Convenience Co-op. Co.,* 922 F.2d 429, 432 (7th Cir. 1991) (preliminary injunction); *Unilectric, Inc. v. Holwin Corp.,* 243 F.2d 393, 396 (7th Cir. 1957) (royalties); *King Mechanism & Eng'g Co. v. W. Wheeled Scraper Co.,* 59 F.2d 546, 548 (7th Cir. 1932) (patent infringement). Because the FAA empowers this Court to compel arbitration, Samsung's arguments against specific performance remain inconsistent with the statute.

Samsung alternatively argues that this action should not continue in court. Because the AAA applied its established rules to this matter, Samsung's theory goes, the Court lacks authority to "second-guess that determination and order [the AAA] to re-open the proceedings." (Reply MTD at 8-9.) Not quite. *See McClenon v. Postmates Inc.,* 473 F.Supp. 3d 803, 812 (N.D. Ill. 2020) (granting motion to compel arbitration after the AAA had closed the cases upon failure of parties to pay the required fees). Samsung's Arbitration Agreement requires dispute resolution "exclusively through final and binding arbitration, and not by a court or jury." (*See* Pet. Ex. E,

Dkt. No. 1-6 at 3.) But no "final and binding" arbitration has been had here.

The cases upon which Samsung relies are distinguishable. For instance, the Fifth Circuit in *Noble Cap Fund Mgmt., L.L.C. v. US Cap. Glob. Inv. Mgmt., L.L.C.,* 31 F.4th 333, 336 (5th Cir. 2022), affirmed a district court's denial of a motion to compel arbitration where the claim had been terminated for failure to pay arbitral fees, because "[e]ven though the arbitration did not reach the final merits and was instead terminated because of a party's failure to pay its JAMS [the ADR provider] fees, the parties still exercised their contractual right to arbitrate prior to judicial resolution in accordance with the terms of their agreements." *Id.* In *Noble,* both parties had met the association's prerequisites to proceed with the arbitration, and the assigned arbitrator had already entered an Emergency Arbitrator's Award after a hearing on the merits. *Id.* at 335. It was only after the arbitration's sustaining fees went unpaid that the arbitration "officially closed." *Id.* Here, the AAA proceedings did not get that far. The cases were administratively closed on November 30, 2022, having not moved beyond the AAA's determination the claims could proceed. An arbitrator was never assigned to their dispute. Thus, our granting the motion to compel arbitration does not "second-guess" any merits determination. It simply returns the matter to the AAA so it may issue one.

The Court will now assess the Motion to Compel on the merits.

### 1. *Valid Agreement to Arbitrate*

The Court may only compel arbitration when the written arbitration agreement is enforceable. 9 U.S.C. § 2; *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4); *see GE France,* 140 S.Ct. at 1645 (citing Convention Article II(3)); *see also* Convention Article II(1).

Petitioners claim to be Samsung device users who agreed to Samsung's drafted Arbitration Agreement. To contend Plaintiff has not met their burden to show a valid agreement to arbitrate, Samsung cites cases where the moving party failed to show the existence of *an* agreement. That is not the issue here. It remains undisputed that the arbitration agreement is written and enforceable against the parties that accede to it. Samsung's strongest argument here is that Petitioners failed to show that *each* one entered into this agreement.

In *Bigger v. Facebook, Inc.,* 947 F.3d 1043, 1051 (7th Cir. 2020), the Seventh Circuit reviewed this Court's grant of class certification when Facebook opposed the issuance of notice on the grounds that its employees entered arbitration agreements that prohibited class actions. *Id.* To support this argument, Facebook provided a template of the agreement and estimates of how many employees signed such forms. *Id.* It did not supply actual executed documents. *Id.* The Seventh Circuit directed this Court to permit the

parties to submit additional evidence on the agreements' existence and validity. *Id.* at 1050.

Here, the Court has more information. There is a discrete list of named Petitioners. The AAA has already reviewed Petitioners' arbitration agreements and determined that they met the filing requirements. The terms do not require signature for execution (see Pet. Opp. MTD, Dkt. No. 36 at 9); elsewhere, Samsung acknowledged that each Samsung device holder accepted Samsung's terms and conditions containing the arbitration clause when using their Samsung device. *See G.T. v. Samsung Electronics America, Inc.,* No. 1:21-cv-04976, ECF No. 17 at 10. As discussed *supra,* the Court finds Petitioners have made a sufficient showing that they are customers. In light of the record, the Court finds a valid agreement to arbitrate between Samsung and the Petitioners who are customers.

To find that each Petitioner residing in this District is a Samsung customer, the Court must accept the word of over 30,000 individuals, some of whom may have been recruited to this action by obscure social media ads. (*See* Dkt. Nos. 27-7—27-10.) Samsung has not identified a genuine issue of fact as to any individual Petitioner. *Kass,* 2023 WL 4782930, at *5. Samsung has a customer list, against which they could compare the list of Petitioners. Samsung raised concerns about specific names to the AAA, which in turn asked Petitioners to correct their list. Petitioners did so,

and the record does not show that Samsung has raised specific concerns since. Samsung's current rejection that all Petitioners are customers is merely "denying facts," and this is not enough. *Tinder,* 305 F.3d at 735 ("Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial."); *see* FED. R. CIV. P. 56(e).

Moreover, the inquiry for purposes of providing notice involves different interests than those of whether to compel arbitration. In *Bigger,* the Court explained the inconveniences associated with providing notice of a class to many people who could eventually be found ineligible due to an arbitration agreement. 947 F.3d at 1050-51. Here, the claimants, as parties to the case, are already aware of it.

Therefore, the Court finds a valid agreement to arbitrate.

### 2. Dispute within the Scope of the Arbitration Agreement

Once the court finds a valid agreement to arbitrate, the party opposing arbitration has the burden to show that the dispute falls outside the scope of the agreement. *Hoenig v. Karl Knauz Motors.,* 983 F.Supp. 2d 952, 962 (N.D. Ill. 2013) (citing *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226-27 (1987)). Still, when parties clearly and unmistakably delegate threshold arbitrability

questions to an arbitrator, a court "possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S.Ct. 524, 530 (2019). The Court assesses the parties' arbitration agreement under Illinois law to determine whether there exists an enforceable delegation clause. *See Gupta v. Morgan Stanley Smith Barney, LLC,* 934 F. 3d 705, 711 (7th Cir. 2019).

Petitioners argue, and Samsung does not meaningfully dispute, that through text such as, "The arbitrator shall decide all issues of interpretation and application of this Agreement" (Pet. Exs. B-E), Samsung's arbitration agreement delegates questions regarding its scope to an arbitrator. The Court agrees with this interpretation of the plain language. *See Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 66, 72 (2010) (holding that language, "Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement" constituted a clear and unmistakable delegation of arbitrability questions to the arbitrator). Additionally, many courts have held that reference to or incorporation of AAA rules – which the agreement here references – constitutes clear and unmistakable evidence to delegate arbitrability to an arbitrator. *See Tel. Invs. USA, Inc. v. Lumen Techs., Inc.,* 2022 WL 2828751, at *4 (N.D. Ill. July 20, 2022) (collecting cases).

Samsung argues that petitioning on behalf of nearly 50,000 petitioners violates the Arbitration Agreement's collective action waiver. Whether the mass filings are indeed appropriate under the arbitration agreement in light of its class action waiver provision is clearly a question of scope. Thus, because the parties both agreed to delegate enforceability questions to the arbitrator and incorporated the AAA rules in the arbitration agreement, the question of whether Petitioners' mass filings violate the Arbitration Agreement remains for an arbitrator, not this Court. *See Henry Schein,* 139 S.Ct. at 530; *see also McClenon,* 473 F.Supp. 3d at 811–12.

The question of arbitrability of Petitioners' underlying BIPA claims reaches the same result. Samsung insinuates that Petitioner's claims are frivolous and for that reason Samsung should be entitled to evade arbitration. The U.S. Supreme Court said otherwise: "[The FAA] contains no 'wholly groundless' exception, and we may not engraft our own exceptions onto the statutory text." *Henry Schein,* 139 S. Ct. at 530.

Therefore, the Court resolves this element in favor of arbitration.

### 3.  *Refusal to Arbitrate*

The Court now turns to whether Samsung's refusal to pay the AAA's fees for each individual claimant constitutes a breach of its

own arbitration agreement. Determining that it does, the Court then considers whether its order to compel arbitration should specify fee payment.

Under the FAA, "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement," in the event of "failure, neglect, or refusal" of the non-moving party to arbitrate. 9 U.S.C.A. § 4.

Samsung sets forth interweaving arguments: Samsung's refusal to pay fees was not a breach; Petitioners waived their right to arbitrate thus relieving Samsung of responsibility; and the AAA enjoys sole authority to determine a resolution regarding fees. Petitioners argue that Samsung's failure to pay constitutes a breach that this Court must remedy by ordering Samsung to take effective action to arbitrate.

Samsung asserts that it "declined to pay the arbitral fees but stood ready to arbitrate." (Reply MTD at 4.) That is a contradictory position. Arbitration was conditioned on the payment of the AAA's assessed fees, per Samsung's own Arbitration Agreement. The AAA's Consumer Rules establish that "the AAA may *require* the parties to deposit in advance of any hearings such sums of money as it decides are necessary to cover the expense of the arbitration," (Rule R-6 (emphasis added)), and the AAA did this. (*See* ex. 27-14 ("Samsung is

now *responsible for* payment of the initial administrative filing fees totaling $4,125,000.00") (emphasis added).)

Samsung retorts that because the AAA rules anticipated non-payment, *see e.g.,* Supplementary Rule 10(d), Samsung's actions were acceptable. But the fact that Petitioners had the option to pay Samsung's fees does not negate the reality that those fees were deemed Samsung's responsibility by the AAA. A rule's mere anticipation of violations thereof does not render violations permissible. If so, this justice system in which we operate would make a lot less sense.

Samsung goes on to argue that Petitioners had a choice "between (i) advancing the filing fees and seeking to recoup them in the arbitration and (ii) permitting the arbitral cases to be closed and proceeding in court," and because they failed to pay Samsung's fees, Petitioners' waived their right to compel arbitration. (Reply MTD, Dkt. No. 38 at 15.) Samsung thus concludes that Petitioners "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Morgan v. Sundance, Inc.,* 142 S.Ct. 1708, 1714 (2022).

The Court disagrees. In *Morgan,* the defendants litigated in court for nearly eight months after the suit's filing before moving to stay the litigation and compel arbitration. *Id.* at 1711. Here, Petitioners immediately moved to compel arbitration when Samsung

expressed its refusal to pay the fees. This is after Petitioners had sent Samsung notices of intent to arbitrate, filed complaints in the forum agreed upon by the Arbitration Agreement, and satisfied their AAA-dictated financial responsibilities by paying their own filing fees.

Samsung's reference to *Cota v. Art Brand Studios, LLC,* 21-cv-1519 (LJL), 2021 U.S. Dist. LEXIS 199325, at *46 (S.D.N.Y. Oct. 15, 2021), also misses the mark. In *Cota,* the district court denied the defendant art studio company's motion to compel arbitration after the defendants refused to pay AAA arbitration fees for the plaintiff artists. *Id.* But in that case, both parties consistently paid the AAA's initial fees to allow the claims to be heard by the arbitrator panel. *Id.* at 14. Only after receiving significantly larger invoices for subsequent final fees, the plaintiffs notified the AAA they were unable to pay due to financial hardship, then the AAA offered to the defendants the option to cover those costs to keep the arbitration alive. *Id.* at 27. But here, Samsung declined to pay its share of the arbitration fees, not because of financial hardship, but because of its own independent determination of deficiencies within Petitioners' claims, even after Petitioners corrected them to AAA's satisfaction. Samsung also declined to pay the fees from the beginning, unlike the party in *Cota* that initially paid the fees in a showing of good faith.

Given the AAA's own determination that the claimants met the AAA's administrative filing requirements and Petitioners' own compliance with its filing and financial requirements based on the AAA's rules and procedures, Petitioners' refusal to meet Samsung's financial obligations does not constitute a waiver to compel arbitration. Plaintiff's conduct has consistently aligned with their right to arbitrate. At least, Defendant has not shown otherwise.

### 4. Fees

Finally, the Court turns to whether to compel Samsung to pay fees. Other courts have observed "no totally satisfactory solution" to a party's nonpayment of its share of arbitration fees. *Lifescan,* 363 F.3d at 1013.

Samsung argues that because the AAA's rules include provisions regarding the payment of fees, and the parties elected to grant the AAA discretionary authority regarding the implementation of those rules, the AAA enjoys sole authority to determine a resolution to Samsung's shirked fee responsibilities. In other words, the Court should treat this like it treated the class action waiver.

In *Howsam v. Dean Witter Reynolds, Inc.,* the Supreme Court distinguished between procedural and substantive questions of arbitrability. 537 U.S. 79, 84 (2002) ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide.") The Court

concluded that the ADR tribunal's time-bar rule was akin to a "waiver, delay, or a like defense" and was thus procedural, for an arbitrator. *Id.* at 85 (cleaned up). The *Howsam* Court looked to comments to the Revised Uniform Arbitration Act ("RUAA"), modeled to incorporate FAA jurisprudence, providing, " 'in the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability, *i.e.,* whether prerequisites such as *time limits,* notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.' " *Id.,* (quoting RUAA § 6, comment 2, 7 U.L.A., at 13 (emphasis in *Howsam*). Here, the parties disagree that they are bound by the Arbitration Agreement to pay the filing fee, therefore, it is for this Court to decide "whether the parties are bound" to do so. *Id.* at 84.

Indeed, the filing fee is more substantial than a time limit. The AAA, commonsensically, requires fees to perform its services. The AAA can validly refuse to conduct arbitrations without payment, as it did here. To expect it to perform its arbitral services regarding payment without payment places undue burden on a non-breaching party, either the AAA or the claimants, to front the costs. If this Court merely orders arbitration but not the payment of fees, the AAA might seek payment from Petitioners with the expectation that Petitioners will invoice Samsung for this payment. (See Rule R-

- 30 -

2 (a)(3), Dkt. No. 1-7.) For what it is worth, the Court understands that Samsung – who has argued neither inability to pay nor unconscionability – can also recoup its fees if Petitioners' claims are as "harass[ing]" or "frivolous" as it contends (see Rule R-44 (c)), but the Court has not been convinced that Petitioners are able to lend over $4,000,000 while the dispute pends.

The Court also remains unpersuaded by courts that have compelled arbitration yet declined to extend the ruling to payment of arbitration fees in distinguishable cases. In *Croasmun v. Adtalem Glob. Educ., Inc.,* Judge Lefkow declined to compel arbitral fees upon finding "no indication that JAMS [the arbitration tribunal] will not resolve the fees issue if asked." 2020 WL 7027726, at *4 (N.D. Ill. Nov. 30, 2020). However, the court invited the parties to "return to this court for resolution" if JAMS declined to arbitrate without the payment of fees, explaining that the petitioners "should not face checkmate." *Id.*

A few months earlier, in *McClenon v. Postmates Inc.,* 473 F.Supp. 3d 803, 812 (N.D. Ill. 2020), Judge Rowland granted the petitioners' motion to compel after the AAA closed the claims for Postmates' failure to pay fees. Yet, she stopped short of ordering Postmates to pay all fees, citing an on-going case against the same defendant in California, *Adams v. Postmates, Inc.,* 414 F.Supp. 3d 1246, 1255 (N.D.

Cal. 2019), and *Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.,* 588 F.3d 884, 887 (5th Cir. 2009).

In *Dealer Computer,* 588 F.3d at 887, cited approvingly by *Lumbermens Mut. Cas. Co. v. Broadspire Mgmt. Servs., Inc.,* 623 F.3d 476, 482 (7th Cir. 2010), the Fifth Circuit reversed a district court's order of payment of arbitral fees where the respondent appeared unable to pay them, while the petitioner had the means. *Dealer Computer Servs.,* 588 F.3d at 888 n.3. The court explained,

> A difficult situation might be presented if [the respondent] could afford to put up its part of the arbitral fee attributable to its counterclaim, and [the petitioner] was not financially able to put up the entire thus enhanced fee (although being able to put up what the fee would have been without such enhancement), and the arbitral panel refused [the petitioner's] request to proceed on its claims . . . However, we are not faced with any such case.

*Id.* This Court faces such a case.

In any event, when the Fifth Circuit in *Dealer Computer* observed, "payment of fees seems to be a procedural condition precedent set by the AAA," it looked to AAA Rules R-52 and R-54, which fall under the "General Procedural Rules" chapter of the Consumer Rules. *Id.* at 887. The Rules, since updated, still list Rules R-52 and R-54 within the "General Procedural Rules" chapter. Rule R-52 now is titled, "Serving of Notice and AAA and Arbitrator Communications," and Rule R-54 is "Remedies for Nonpayment." (*See* AAA Rules, Dkt. No. 1-7.) The rules for payment of fees themselves are contained in other chapters that lack the word "procedure."

(*Compare* "Cost of Arbitration" and "AAA Administrative Fees" *with* "Hearing Procedures" and "Procedures for the Resolution of Disputes through Document Submission," AAA Rules, Dkt. No. 1-7.)

Nevertheless, the determination of "procedural" is "difficult." *See Romspen Mortg. Ltd. P'ship v. BGC Holdings LLC – Arlington Place One,* 20 F.4th 359, 369 (7th Cir. 2021). Federal courts adjudicating claims through pendant jurisdiction classify as substantive rather than procedural issues that are bound up in the rights of the forum. *See USA Gymnastics v. Liberty Ins. Underwriters, Inc.,* 46 F.4th 571, 580 (7th Cir. 2022); *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938) (and its progeny). For example, attorney's fees are typically substantive. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 259 (1975). On the other hand, federal procedural rules obliging an answer to a complaint dictate that a party who "defaults" on their defense faces a detriment; but allowing "default" by unpaid fees here might well benefit Samsung. *See* Alexi Pfeffer-Gillett, *Unfair by Default: Arbitration's Reverse Default Judgment Problem*, 171 U. Pa. L. Rev. 459, 488 (2023). If anything, allowing that to stand would be making special procedural rules for arbitration – which the courts cannot do. *Morgan v. Sundance, Inc.,* 142 S.Ct. 1708, 1713 (2022).

Whether from the perspective of the judiciary or through the lens of the AAA, this Court does not see filing fees as procedural

in this case. The fees are bound up in the right to arbitrate that the ADR tribunal governs. Unlike the time limit rule in *Howsman* that delineates when parties can arbitrate or the collective action provision that might instruct how, the filing fee rule affects whether the parties can exercise their right to arbitrate at all. Money is the means of dispute resolution, and the way to start this process. Fees are not something the Court can "jigger" to promote or disfavor arbitration. *Johnson v. Mitek Sys., Inc.,* 55 F.4th 1122, 1124 (7th Cir. 2022). If it could, it might suggest a more modest figure.

Samsung was surely thinking about money when it wrote its Terms & Conditions. The company may not have expected so many would seek arbitration against it, but neither should it be allowed to "blanch[] at the cost of the filing fees it agreed to pay in the arbitration clause." *Abernathy v. Doordash, Inc.,* 438 F.Supp. 3d 1062, 1068 (N.D. Cal. 2020) (describing the company's refusal to pay fees associated with its own-drafted arbitration clause as "hypocrisy" and "irony upon irony").

Alas, Samsung was hoist with its own petard. *See Nat'l Ass'n of Regul. Util. Comm'rs v. U.S. Dep't of Energy,* 736 F.3d 517, 520 (D.C. Cir. 2013); William Shakespeare, *Hamlet,* Act III, Scene 4. As a New York court recently stated in a mass arbitration case involving Uber, "While Uber is trying to avoid paying the arbitration fees associated

with 31,000 nearly identical cases, it made the business decision to preclude class, collective, or representative claims in its arbitration agreement with its consumers, and AAA's fees are directly attributable to that decision." *Uber Tech., Inc. v. American Arbitration Assn., Inc.,* 204 A.D.3d 506, 510 (N.Y. App. Div. 2022). Samsung made the same business decision here, and for better or for worse, the time calls for Samsung to pay for it.

### IV.   CONCLUSION

For the reasons stated herein, the Court grants in part Samsung's Motion to Dismiss (Dkt. No. 26) by dismissing the action as to the 14,335 Petitioners who have failed to allege proper venue in the Northern District of Illinois. The Court grants Petitioner's Motion to Compel Arbitration (Dkt. No. 2) by ordering the parties to arbitrate, specifically ordering Samsung to pay its fee so they can.


**IT IS SO ORDERED.**


_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 9/12/2023

- 35 -